**Jesse ROBINSON, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

**No. 637, Docket 83–6199.**

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1984.

Decided April 30, 1984.

Elizabeth M. Imholz, Brooklyn Legal Services Corp. B, Brooklyn, N.Y. (John C. Gray, Jr., Jane Greengold Stevens, Ruben Nazario, Brooklyn, N.Y., of counsel), for plaintiff-appellant.

Kiyo A. Matsumoto, Asst. U.S. Atty., E.D.N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Miles M. Tepper, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before LUMBARD, MESKILL and PRATT, Circuit Judges.

LUMBARD, Circuit Judge:

This is an appeal from the Eastern District of New York, Thomas C. Platt, Judge, affirming a decision of the Secretary of Health and Human Services ("Secretary") terminating Disability Insurance and Supplemental Security Income ("SSI") benefits based on a determination that appellant, Jesse Robinson, ceased to be disabled for purposes of eligibility under the Social Security Act as of January 1982.

Robinson was born in Florence, South Carolina on April 3, 1935. He has been employed as a power press operator, a messenger and a truck helper but has not worked since 1972. In 1973, Robinson was found to be disabled under the New York State Plan for Aid to the Permanently and Totally Disabled. Robinson was converted to the SSI program when it began in 1974. In September 1974, he filed for disability insurance. He was found disabled due to arthritis, myocardial infarction, and cirrhosis of the liver. He began receiving benefits retroactive to January 1972, and continued to receive them through March 1982.

In April 1981, the Social Security Administration requested information from Robinson to determine whether he was still entitled to benefits. On November 12, 1981, Dr. Zarday, a consultative physician, examined Robinson and diagnosed hypertension, an enlarged heart, low back syndrome and an "emotional and nervous condition." Robinson was also examined by Dr. Jay Cavanaugh, a consultative psychiatrist, who described Robinson as slightly obese and appearing to be older than his true age. He stated that Robinson exhibited mild anxiety and depressive symptoms and, considering his age and long-standing medical problems, the prognosis was poor. Dr. Cavanaugh concluded that Robinson's "medical problems are sufficient to make him semi-invalided."

On November 12, 1981, Dr. Emmanuel Mendelson performed a radiographic examination of Robinson at the request of the Social Security Administration. He examined Robinson's left shoulder, lumbosacral spine and chest and concluded that the spine was normally aligned but that there was "minimal spur formation about the vertebral bodies" and that there was "slight cardiac enlargement." On January

13, 1982, Dr. A. Slovis, a consultative physician, conducted a treadmill exercise stress examination of Robinson which was terminated after three minutes due to Robinson's fatigue and resulted in a negative finding for ischemic heart disease.

On February 4, 1982, the Social Security Administration informed Robinson of its intention to terminate his disability insurance and SSI benefits because the medical evidence indicated that Robinson became able to do "substantial gainful work" as of January 1982. On February 11, 1982, the Secretary requested additional information to supplement the information compiled pursuant to the April 1981 request. Robinson submitted a medical x-ray report, prepared by his physician, Dr. Alvin J. Tolosa, that indicated severe osteoarthritis of the cervical spine and minimal osteoarthritis in the shoulders and lumbosacral spine.

At Robinson's request, a thirty-minute hearing was held before the Administrative Law Judge ("ALJ") on April 14, 1982. Robinson was not represented by counsel and presented only his own testimony. At the hearing, he testified that he suffers from arthritis that made it difficult to sleep, stoop and bend. He also testified that he suffers from chest pain, dizziness and fatigue, takes nitroglycerine capsules, Motrin, Lasiz, Dalmane and Valium and that he was hospitalized twice for high blood pressure and hemorrhages.

In a decision dated April 30, 1982, the ALJ found that Robinson did not have a medically severe impairment. The ALJ's decision included the findings that (1) Robinson suffers from "arthritis, essential hypertension under control, mild anxiety and depression, slight cardiac enlargement and mild hypertrophic spondylosis," (2) Robinson's condition, based on the medical evidence and his demeanor, is not disabling, and (3) Robinson failed to prove that on or after January 1982 he was suffering from a severe impairment. The ALJ found that because the appellant does not suffer from a severe impairment, he is not under a disability and is therefore capable of engaging in substantial gainful work.

Robinson requested review of the ALJ's decision by the Appeals Council. In support of his application, Robinson submitted a letter dated May 10, 1982 from his treating physician, Dr. Jovita Jaber, which stated that he was unable to perform any "fruitful labor." The Appeals Council admitted the Jaber letter into the record but denied the request for review and adopted the ALJ's decision which thus became the Secretary's final determination.

Robinson appealed the decision of the Secretary to the District Court. In an order dated May 18, 1983, Judge Platt granted the Secretary's motion for judgment on the pleadings and denied Robinson's cross-motion. This appeal followed. Because we find that Robinson was not afforded a fair hearing, we reverse and remand to the Secretary for reconsideration consistent with this opinion.

Robinson raises three issues on appeal. First, he urges the court to adopt a position that would require the Secretary, in a cessation of benefits situation, to show a material improvement in the claimant's condition. Second, Robinson argues that he was not afforded a fair hearing because the ALJ failed to develop the record and adequately inform him of his right to counsel. Third, he asserts that the ALJ erred in ending her inquiry once she found that he did not suffer from a severe impairment.

As we agree with Robinson's second argument that he was not accorded a fair hearing, we find it unnecessary to consider his first and third arguments.

A court reviewing a Secretary's decision "must be satisfied that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficient purposes of the Act.'" *See Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980) (quoting *Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir.1972)). The claimant is entitled to be represented by counsel at the hearing and the ALJ must ensure that the claimant is aware of this right. *See Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir.1975).

**258**

When a claimant is unrepresented, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts ...," *id.*, and the reviewing court must make a "searching investigation" of the record to ensure that the claimant's rights were protected, *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir.1972). This is especially true in termination cases. After a review of the record before us, we conclude that Robinson was not afforded a fair hearing by reason of the ALJ's failure to develop the record.

The record is replete with instances where the claimant referred to missing documents and the ALJ failed to follow up the claimant's inquiries. For example, after agreeing to the admission into evidence of the fourteen documents contained in the Disability Unit file, the claimant was asked if he had any documents that he would like to submit. Robinson stated that he "had an X-ray and sent it in" but that he did not know if it was before the ALJ. The ALJ indicated that she did not have it but made no further inquiry. Further, at the close of the thirty-minute hearing, the claimant stated that there was a letter referring to arthritis and that he did not know why it was not before the ALJ. Earlier in the hearing Robinson referred to the letter and stated "[w]ell ma'am, I got this arthritis in the lower spine. That's when I sent the letter. I thought you would have it here. Because that was in my record."

In sum, the failure of the ALJ to develop the record fully and to afford Robinson, who was unrepresented by counsel, an adequate opportunity to do so, denied Robinson a fair hearing. Accordingly, we reverse the order of the district court with directions to remand the case to the Secretary for further proceedings consistent with this opinion. Thus, Robinson is to be reinstated as eligible for benefits retroactive to the date of termination, and awarded reasonable attorney's fees.