Valere POULIN, Appellant,

v.

Otis R. BOWEN, Secretary, United States Department of Health and Human Services.

No. 84–5795.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 5, 1985.

Decided May 1, 1987.

James R. Crotteau for appellant. Charles Horwitz also entered an appearance for appellant.

William J. O'Malley, Jr., Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and R. Craig Lawrence and Royce C. Lamberth, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. James N. Owens, Washington, D.C., also entered an appearance for appellee.

Before ROBINSON, Circuit Judge, and WRIGHT and McGOWAN, Senior Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant Valere Poulin, a Canadian citizen who worked intermittently in New England during the 1960's, indisputably is now totally disabled by schizophrenia. However, the Secretary of the Department of Health and Human Services denied his claim for disability benefits under the Social Security Act,[1] finding that his disability commenced after his statutory eligibility ceased. The District Court affirmed the Secretary's decision,[2] and appellant seeks reversal of that judgment. Because we

---

1. Act of Aug. 14, 1935, ch. 531, tit. II, §§ 201 *et seq.*, 49 Stat. 620, 622, codified as amended at 42 U.S.C. §§ 401 *et seq.* (1982 & Supp. III 1985) [hereinafter cited as codified].

2. *Poulin v. Heckler,* 591 F.Supp. 1577 (D.D.C. 1984).

find that the record lacks substantial evidence on which to base the Secretary's conclusions, we vacate the judgment of the District Court and remand to the Secretary for further proceedings.

## I. BACKGROUND

Appellant was 41 years old at the time of the hearing.[3] His primary language is French; he can speak and understand some English.[4] He has a tenth-grade education.[5] He lives on a Canadian disability pension,[6] and has not worked since a brief period in 1975.[7] He lives near his parents and relies heavily on his family;[8] he has little contact with the outside world,[9] and cannot cash his pension checks or shop for groceries.[10] He believes that he can direct the dead and communicate telepathicly with televisions, radios, and microwave ovens.[11] His psychiatrists agree that his prognosis is extremely poor.[12] Like the District Court, this court "must note that it feels great sympathy for Mr. Poulin." [13]

However, appellant's obvious present disability is not here the issue, and cannot alone entitle him to Social Security disability benefits. Rather, he may receive benefits only if his total disability, within the meaning of the Social Security Act,[14] commenced before his eligibility ceased. Accordingly, we direct our review to that period.[15]

Appellant suffered his first known acute attack of schizophrenia in September, 1968, while working as a clerk at a logging camp in Maine.[16] He was hospitalized under the care of a psychiatrist, Dr. Yves Rouleau, treated with electroshock therapy and neuroleptics, and released from the hospital on

---

3. The administrative law judge apparently subtracted ten years from appellant's age. Compare *Valere Poulin*, S.S.N. 130–34–0199 (Social Sec. Admin. Office of Hearings and Appeals May 14, 1982) (decision of administrative law judge) at 7, Joint Appendix (J.App.) 37 [hereafter cited as *ALJ Decision*] with Letter from V. Poulin to Social Security Administration, Bangor, Maine Office (Jan. 22, 1982) at 1, J.App. 85 (indicating date of birth of July 11, 1941).

4. *Poulin v. Heckler, supra* note 2, 591 F.Supp. at 1579. Appellant was aided by a translator in his contacts with the Social Security Administration and at the hearing before the administrative law judge. *Valere Poulin*, SSN 130–34–0199 (hearing before administrative law judge, Jan. 29, 1982), Transcript (Tr.) at 2, J.App. 41; Letter from V. Poulin, *supra* note 3, at 3, J.App. 87.

5. *ALJ Decision, supra* note 3, at 6, J.App. 36.

6. Tr. 8, J.App. 47.

7. Tr. 6, J.App. 45.

8. Tr. 8, J.App. 47.

9. Tr. 9–10, J.App. 48–49.

10. Tr. 14, J.App. 53.

11. Tr. 11–12, J.App. 50–51.

12. Letter from Dr. J. Potvin (July 2, 1980), J.App. 81; Letter from Dr. J. Perron (Mar. 3, 1980), J.App. 76; Letter from Dr. Y. Rouleau (Oct. 7, 1980), J.App. 82.

13. *Poulin v. Heckler, supra* note 2, 591 F.Supp. at 1579.

14. The Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (1982). The impairment must be "of such severity that [appellant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

15. *ALJ Decision, supra* note 3, at 7, J.App. 37.

16. Letter from V. Poulin, *supra* note 3, at 2, J.App. 86. Appellant's early work history reveals signs of discomfort that are consistent with the prodromal phases of schizophrenia. See The Merck Manual 1533, J.App. 13; American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 184 (3d ed. 1980) [hereinafter cited as DSM–III]. He worked on road crews in Connecticut from 1960–1963, and returned to Quebec to rest, "having drained myself out." Letter from V. Poulin, *supra* note 3, at 1, J.App. 85. He again worked in construction in the United States in 1964, but within a year returned to 'Canada to rest for six months and consult his family doctor. *Id.* He then worked as a clerk for two years in a Quebec paper company, quitting in 1967 because "[t]he job was worrisome mentaly [sic]. I was not well and I didn't feel myself adapt [sic] to these working surroundings. It did happen to me very often, to be anguish [sic] with people who were gathering around me." *Id.*

a maintenance dosage of stelazine.[17] He continued treatment on a outpatient basis.[18] Three months after leaving the hospital, appellant took a job as a clerk for a firm near his home in Canada. He was able to maintain this job for eleven months, earning $3,411.20, and apparently performed satisfactorily.[19] However, while he was working, appellant's condition deteriorated to the degree that his doctor reinstated his psychotropic medication and reported that "he feels that he has been spied upon and watched by the others, he is always afraid that they treat[ ] him as a homosexual, at certain times, we wonder if he does not have certain auditory hallucinations." [20] His cousin testified at the hearing that appellant was extremely sick while working, and was only able to maintain his job through "great good will and courage." [21] The record is completely blank for the period between November, 1969, when appellant resigned from this job, and December, 1971, when he was again hospitalized after a suicide attempt,[22] suffering from an acute psychotic reaction.[23] In the meantime, on June 30, 1971, his eligibility for disability payments ran out.

Appellant first applied for disability benefits in 1974. This claim was denied a year later.[24] His second application, filed in 1980,[25] also met with initial administrative rejections that were affirmed by an administrative law judge after a hearing at which only appellant (with an interpreter's assistance), his brother, and his cousin testified. Appellant was unrepresented.[26] Poulin appealed to the Appeals Council, which again rejected his claim.[27] Poulin turned to the District Court for relief; when it dismissed his complaint, this appeal ensued.

## II. RES JUDICATA

We must first dispose of the Secretary's threshold contention that appellant's application for benefits is barred by res judicata because of his 1974 claim.[28] Social Security Administration regulations allow an administrative law judge to deny a claim

---

17. Letter from Dr. Y. Rouleau (Dec. 19, 1979) at 2, J.App. 69. Stelazine is used to control manifestations of psychotic disorders. Physicians' Desk Reference 1910 (37th ed. 1983); see *Parsons v. Heckler*, 739 F.2d 1334, 1337 n. 4 (8th Cir.1984).

18. Letter from Dr. Y. Rouleau, *supra* note 17, at 2, J.App. 69.

19. Statement of LaChance Brothers, Beauceville, Canada (Dec. 14, 1979) at 1, J.App. 57.

20. Letter from Dr. Y. Rouleau, *supra* note 17, at 2, J.App. 69.

21. Tr. 15–16, J.App. 54–55.

22. Tr. 35, J.App. 52.

23. Letter from Dr. Y. Rouleau, *supra* note 17, at 2, J.App. 69.

24. Memorandum of Points and Authorities in Support of Defendant's Motion for Judgment of Affirmance, *Poulin v. Heckler*, Civ. No. 83–1253 (filed June 27, 1984), Record Document (R.Doc.) 12 at 1. We note that neither appellant's claims nor the administrative denials appear in the record on appeal. This oversight has hampered our review.

25. *Id.* at 2.

26. The District Court found that appellant had validly waived his right to counsel. *Roulin v. Heckler, supra* note 2, 591 F.Supp. at 1580–1581. This finding was not appealed even though apparently based on a misunderstanding of appellant's facility in English, compare *id.* at 1581 (finding appellant able "to compose a detailed letter in English") with Letter from V. Poulin, *supra* note 3, at 3, J.App. 87 (noting that the letter referred to was a translation); without consideration of the effect of claimant's mental condition on his ability knowingly and intelligently to waive his right to counsel; and absent consideration of whether appellant had been informed fully of the right to counsel, the availability of free counsel, or the special allowances for attorneys' fees under the Act. See *Robinson v. Secretary of HHS*, 733 F.2d 255, 257 (2d Cir. 1984); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Smith v. Secretary of HEW*, 587 F.2d 857, 860 (7th Cir.1978); *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir.1982).

27. Exhibit 1 to Complaint, *Poulin v. Heckler*, Civ. No. 83–1253 (filed Apr. 29, 1983). Standards for review by the Appeals Council are set by 20 C.F.R. § 404.970 (1986). We note that the review accorded to appellant was apparently so cursory that the Appeals Council misapprehended appellant's sex, addressing him as "Ms. Poulin" despite the fact that the record clearly reveals his gender.

28. Brief for Appellee at 21–22.

based upon res judicata,[29] but the administrative law judge before whom appellant presented his claim specifically declined to do so. Rather, despite noting that the claim was "potentially subject to a res judicata dismissal," the judge declined to exercise his discretion to dismiss, stating that "because of the claimant's allegation of a continuing disability the current 1980 applications are being adjudicated on the merits." [30] The administrative law judge did not rest his decision to address the merits of appellant's claim on his separate authority to reopen the 1974 claim,[31] but rather specifically noted that "no basis for reopening [the 1974 claim] under the applicable regulations" existed.[32]

 The mere inapplicability of grounds for reopening does not, under the regulations, require the administrative law judge to exercise his power to dismiss on the basis of res judicata:

> [E]ven though the subsequent claim may be the same claim for res judicata purposes, if it has nevertheless been reconsidered on the merits to any extent and at any administrative level, it is thereup-

on properly treated as having been, to that extent, reopened as a matter of administrative discretion.... In that event a final decision of the Secretary denying the claim is also subject to judicial review to the extent of the reopening.[33]

By the administrative law judge's discretionary reopening of appellant's claim, the agency expressly waived applicability of administrative res judicata; it may not now advance this doctrine as an alternate basis for its decision.[34]

 Furthermore, any res judicata defense was also waived by the Secretary's failure to raise it in his answer to appellant's complaint.[35] Res judicata must be pleaded as an affirmative defense.[36] Failure to so plead constitutes a waiver of the defense.[37] The Secretary did not first present the res judicata defense until his post-answer motion for judgment of affirmance.[38] The District Court did not even address this tardy claim. The failure to plead res judicata, coupled with the express waiver at the administrative level, precludes its application now.[39]

29. 20 C.F.R. § 404.957(c)(1) (1986).

30. *ALJ Decision, supra* note 3, at 3, J.App. 33. There is some suggestion in the record that administrative denials of appellant's 1980 application at the pre-hearing levels of initial determination and reconsideration may have been in part based on res judicata. Memorandum of Points and Authorities in Support of Defendant's Motion for Judgment of Affirmance, *supra* note 24, at 2. We are unable to verify this assertion because the documents constituting these denials do not appear in the record on appeal, and therefore we accord it no weight.

31. See 20 C.F.R. §§ 404.988–404.989 (1986).

32. *ALJ Decision, supra* note 3, at 3, J.App. 33.

33. *McGowen v. Harris,* 666 F.2d 60, 65–66 (4th Cir.1981); see also *Farley v. Califano,* 599 F.2d 606, 607–608 (4th Cir.1979); *Peck v. Heckler,* 738 F.2d 1112, 1114–1115 (10th Cir.1984).

34. See *Purter v. Heckler,* 771 F.2d 682, 696 (3d Cir.1985); *Brown v. Heckler,* 565 F.Supp. 72, 74 (E.D.Wis.1983); *Broome v. Heckler,* 562 F.Supp. 868, 869 (W.D.N.C.1983); *Staskel v. Gardner,* 274 F.Supp. 861, 864–865 (E.D.Pa.1967). But see *Domozik v. Cohen,* 413 F.2d 5, 7 (3d Cir. 1969) (where administrative law judge did not expressly waive res judicata, agency may prop-

erly plead it on appeal), confined to its facts by *Purter v. Heckler, supra,* 771 F.2d at 693.

35. *Poulin v. Heckler,* Civ. No. 83–1253 (filed Mar. 29, 1984), R.Doc. 10.

36. Fed.R.Civ.P. 8(c).

37. *Dellums v. Powell,* 184 U.S.App.D.C. 275, 285 n. 13, 566 F.2d 167, 177 n. 13 (1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Camalier & Buckley-Madison, Inc. v. Madison Hotel,* 168 U.S.App.D.C. 149, 161–162 n. 92, 513 F.2d 407, 419–420 n. 92 (1975); 5 C. Wright & A. Miller, Federal Practice § 1278, at 339, 341 (1969).

38. *Poulin v. Heckler,* Civ. No. 83–1253 (filed June 27, 1984), R.Doc. 12.

39. We note additionally that appellant's mental illness, and consequent limited ability to manage his affairs, may further weigh against the applicability of res judicata. See *Green v. Weinberger,* 500 F.2d 203, 205 (5th Cir.1974); *Parker v. Califano,* 644 F.2d 1199, 1201–1203 (6th Cir.1981); *Elchediak v. Heckler,* 750 F.2d 892, 893–894 (11th Cir.1985); *Crouch v. Secretary of HEW,* 378 F.Supp. 1384, 1387–1388 (S.D. N.Y.1974). Like the District Court in *Staskel v. Gardner, supra* note 34,

### III. REVIEW OF NON-DISABILITY FINDING

Congress has provided that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."[40] The Supreme Court has defined substantial evidence in this context as "more than a mere scintilla ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[41] This court must reexamine the entire record to determine if it contains substantial evidence to support the Secretary's determination.[42]

We find that the administrative law judge's action in the instant case falls woefully short of this standard for several intertwining reasons. First, the judge failed adequately to develop the record. In particular, he ignored a 19–month evidentiary gap during appellant's benefits eligibility period—a period after Poulin left his last job, allegedly because of health; while he was under treatment for schizophrenia; and shortly after which he attempted suicide and was re-hospitalized. Second, the administrative law judge failed to give ade-

quate weight to the testimony of appellant's treating physicians, in part because of a misunderstanding of the nature of the psychiatric evidence, and in part because of a possible misreading of one doctor's report. Finally, the judge's opinion rests upon a fundamental misconception of mental illness that the Secretary now rejects.

### A. Development of the Record

■ We have at least twice before had occasion to remind the agency that under its own regulation,[43] if not due process itself,[44] an administrative law judge has the affirmative duty to investigate fully all matters at issue and to develop the comprehensive record requisite for a fair determination of disability.[45] This duty becomes especially strict when, as here, the claimant is unrepresented by an attorney.[46] It is also increased when, as again here, the claimant has limited fluency in English.[47] Finally, the duty heightens when, as here, the claimant is the victim of a mental illness that may decrease his ability to repre-

[t]his Court is reluctant to approve the use of a technical defense to bar a[n] uncounseled claimant from benefits to which [ ]he may well be entitled, particularly where the prior proceedings relied upon as a bar were perfunctory administrative proceedings of a nonadversary nature.... Such a defense is peculiarly inappropriate where the Secretary's duty in administering the statute is to see that those who are entitled to benefits under the statute receive them.

274 F.Supp. at 865; see also *Purter v. Heckler, supra* note 34, 771 F.2d at 693.

**40.** 42 U.S.C. § 405(g) (1982).

**41.** *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971) (citation omitted); see also *Cunningham v. Heckler,* 246 U.S.App.D.C. 278, 282, 764 F.2d 911, 915 (1985); *Vance v. Heckler,* 244 U.S.App. D.C. 329, 331, 757 F.2d 1324, 1326 (1985); *Simms v. Harris,* 213 U.S.App.D.C. 259, 260, 662 F.2d 774, 775 (1980).

**42.** *Cunningham v. Heckler, supra* note 41, 246 U.S.App.D.C. at 282, 764 F.2d at 915; *Vance v. Heckler, supra* note 41, 244 U.S.App.D.C. at 330, 757 F.2d at 1325; *Donovan v. Local 6, Washington Teachers' Union,* 241 U.S.App.D.C. 274, 278 n. 1, 747 F.2d 711, 715 n. 1 (1984).

**43.** 20 C.F.R. § 404.944 (1986). The present regulation is a "plain English" revision of the regulation addressed in prior decisions in this circuit, see note 45 *infra,* but was not designed to make any substantive changes. See Department of Health & Human Servs., Social Sec. Admin., Federal Old Age, Survivors, and Disability Insurance and Supplemental Security Income for the Aged, Blind, and Disabled, 20 C.F.R. pts. 404 & 406, Final Rule, Fed.Reg. 52078, 52079 (1980).

**44.** See *Heckler v. Campbell,* 461 U.S. 458, 471–472, 103 S.Ct. 1952, 1959–1960, 76 L.Ed.2d 66, 77–78 (1983) (concurring opinion); *Richardson v. Perales, supra* note 41, 402 U.S. at 401–402, 91 S.Ct. at 1427, 28 L.Ed.2d at 852–853.

**45.** *Narrol v. Heckler,* 234 U.S.App.D.C. 204, 207, 727 F.2d 1303, 1306 (1984); *Diabo v. Secretary of HEW,* 200 U.S.App.D.C. 225, 228–229, 627 F.2d 278, 281–282 (1980).

**46.** *Narrol v. Heckler, supra* note 45, 234 U.S.App. D.C. at 207, 727 F.2d at 1306; *Diabo v. Secretary of HEW, supra* note 45, 200 U.S.App.D.C. at 229, 627 F.2d at 282.

**47.** *Heckler v. Campbell, supra* note 44, 461 U.S. at 471, 103 S.Ct. at 1960, 76 L.Ed.2d at 77 (concurring opinion); *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1982); *Fernandez v. Schweicker,* 650 F.2d 5, 8 (2d Cir.1981).

sent himself.[48] Thus, in the case of an unrepresented non-English-speaking claimant disabled by schizophrenia, the administrative law judge's duty of record-development most certainly rises to its zenith, and absent such record-development the Secretary's decision cannot stand. We find that the administrative law judge failed in his "duty to probe and explore scrupulously all the relevant facts" [49] in several significant respects.[50]

The most glaring among the evidentiary problems is the absence of information concerning the last 19 months of Poulin's eligibility for benefits. Appellant left a job at LaChance Brothers on November 28, 1969.[51] His eligibility for benefits did not expire until June 30, 1971. There was testimony at the hearing that Poulin left his job because of illness,[52] and Dr. Rouleau, his treating psychiatrist during this period, reported that his medicine had to be reinstated shortly after he began the job [53] because of possible auditory hallucinations and Poulin's fears that his coworkers spied on him and treated him as homosexual.[54] Dr. Rouleau indicated that Poulin returned to the outpatient clinic "4 or 5 times" between his discharge from the hospital and his subsequent rehospitalization in December, 1971, but did not describe the outcome of any appointment save that in March,

1969, when appellant was put back on stelazine.[55] Dr. Rouleau described Poulin's post-discharge, prehospitalization condition as "an autistic state, a state of individual who is very dreamer, who isolates himself from the social contacts and who regresses with enormous paranoid elements," [56] but did not further refine the time period in question. In a separate letter, Dr. Rouleau indicated that he considered the disability to be continuous, noting that "Mr. Poulin was first seen by us in September 1968 for a schizophrenic reaction and he never completely recovered and remained in a chronic state living in a state of social isolation and unable to perform a regular work. In fact, Mr. Poulin suffers from chronic invalidism since 1968." [57]

These reports and this testimony shed some faint light on appellant's general mental health during the period between hospitalizations, as well as on the effect of his job on his health and his reasons for leaving the position. However, no evidence of record bears specifically on the 19 months in question. The administrative law judge asked no questions at the hearing about either the relevant time period or the effect on Poulin of the job with LaChance Brothers, although "[m]ore probing questioning ... would undoubtedly have provided more probative information." [58]

**48.** *Smith v. Secretary of HEW, supra* note 26, 587 F.2d at 860–861; *DeBlois v. Secretary of HHS,* 686 F.2d 76, 80–81 (1st Cir.1982).

**49.** *Narrol v. Heckler, supra* note 45, 234 U.S.App. D.C. at 207, 727 F.2d at 1306; *Diabo v. Secretary of HEW, supra* note 45, 200 U.S.App.D.C. at 228–229, 627 F.2d at 281–282.

**50.** The District Court found that the administrative law judge adequately developed the record because "[t]he dispositive fact of plaintiff's 10-month period of work could not have been controverted. This fact was enough to properly end the ALJ's inquiry at that point." *Poulin v. Heckler, supra* note 2, 591 F.Supp. at 1581. This finding is at odds both with a subsequent 19-month gap in the evidence and with the basic nature of schizophrenia. See notes 58–60 *infra* and accompanying text; Section III(C) *infra.*

**51.** Statement of LaChance Brothers, *supra* note 19, at 1, J.App. 57.

**52.** Tr. 14–16, J.App. 53–55 (testimony of Yvon Poulin and France Poulin).

**53.** Letter from Dr. Y. Rouleau, *supra* note 17, at 2, J.App. 69 (indicating renewal of medication in March, 1969). The job began January 6, 1969. Statement of LaChance Brothers, *supra* note 19, at 1, J.App. 57.

**54.** Letter from Dr. Y. Rouleau, *supra* note 17, at 2, J.App. 69.

**55.** *Id.,* J.App. 69. This letter from Dr. Rouleau was originally written in French and subsequently translated into English. See J.App. 68–71.

**56.** Letter from Dr. Y. Rouleau, *supra* note 17, at 2, J.App. 69.

**57.** Letter from Dr. Y. Rouleau (Oct. 7, 1980), J.App. 82.

**58.** *Lashley v. Secretary of HHS,* 708 F.2d 1048, 1052 (6th Cir.1983).

Nor did the judge request any such information from appellant's treating psychiatrists or suggest that appellant obtain such information. "[T]he ALJ[ ] had a duty which has not been adequately discharged to develop the record of the etiology of the illness, its course, and its severity;"[59] "[i]f the ALJ required further evidence of the [disability] or of its effect on [appellant] ... he could have informed appellant of the need to submit further documentation."[60]

The importance of some development of the record concerning this period cannot be gainsaid. First, if the period during which Poulin was able to work was simply a residual phase between two active phases—the normal course of schizophrenia[61]—then the degree of disability during this 19 months will bear directly on "the relevant inquiry ... whether a claimant can engage in any substantial gainful activity during the symptom-free intervals, given the likelihood, frequency, and severity of relapses in his mental illness."[62] Second, even if the period of regular work in 1969 shows that Poulin was not *then* totally disabled, the inquiry properly shifts to when thereafter he became so disabled. The relevant standard, once again, is "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment ... which *has lasted or can be expected to last for a continuous period of not less than 12 months.*"[63] If such a continuous period began *at any time* before June 30, 1971, including during the 19 months after appellant left his job with LaChance Brothers, appellant is entitled to benefits. The administrative law judge failed to address this possibility. Evidence of appellant's state during the 19 months preceding his ineligibility is absolutely critical to these determinations. The judge grievously erred in failing to develop such evidence.[64]

■ The administrative law judge also neglected his duty in several other areas. Standing alone, these would not necessarily mandate remand; in combination, they cast serious doubt on the fairness of the hearing afforded claimant.[65] First, the judge failed "to obtain or admit into evidence relevant and probative medical records."[66] The record contains references to additional medical records that bear on appellant's disability.[67] By neglecting to obtain these records, the administrative law judge slighted his "duty to 'scrupulously and conscientiously probe into, inquire of, and explore for the relevant facts.'"[68] This fail-

**59.** *DeBlois v. Secretary of HHS, supra* note 48, 686 F.2d at 81; see also *Diabo v. Secretary of HEW, supra* note 45, 200 U.S.App.D.C. at 228, 627 F.2d at 281.

**60.** *Narrol v. Heckler, supra* note 45, 238 U.S.App. D.C. at 208, 727 F.2d at 1307; see also *Bluvband v. Heckler, supra* note 47, 730 F.2d at 895; *Echevarria v. Secretary of HHS*, 685 F.2d 751, 756 (2d Cir.1982); *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980).

**61.** DSM-III, *supra* note 16, at 185, 189; see Section III(C) *infra.* The Secretary has revised the Mental Impairments Listings in part to conform with DSM-III. Department of Health & Human Servs., Social Sec. Admin., Federal Old-Age Survivors, and Disability Insurance; Listing of Impairments—Mental Disorders, Final Rule, 50 Fed.Reg. 35038 (1985) [hereinafter cited as Revised Mental Impairments Listings].

**62.** *Lebus v. Harris*, 526 F.Supp. 56, 61 (N.D.Calif. 1981). See notes 92–100 *infra* and accompanying text.

**63.** 42 U.S.C. § 423(d)(1)(A) (1982) (emphasis added).

**64.** *Hankerson v. Harris, supra* note 60, 636 F.2d at 897; *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980).

**65.** See *Diabo v. Secretary of HEW, supra* note 45, 200 U.S.App.D.C. at 231, 627 F.2d at 284 (concurring opinion); *Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir.1975).

**66.** *Diabo v. Secretary of HEW, supra* note 45, 200 U.S.App.D.C. at 228, 627 F.2d at 281.

**67.** See, e.g., Letter from Dr. J. Perron to Department of Health, Education & Welfare (Oct. 1, 1974) at 2, J.App. 65 (indicating review of "previous psychiatric records").

**68.** *Robinson v. Secretary of HHS, supra* note 26, 733 F.2d at 258 (quoting *Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir.1972)); see *Diabo v. Secretary of HEW, supra* note 45, 200 U.S. App.D.C. at 229, 627 F.2d at 282; *Cutler v. Weinberger, supra* note 65, 516 F.2d at 1286.

ure is exacerbated by the fact that the judge in part discounted the medical reports of Poulin's treating physicians as "unsupported by sufficient adequate underlying findings." [69] As we observed in *Narrol v. Heckler* in rejecting an administrative law judge's criticism of a treating doctor's report because "[t]here are no objective medical findings to substantiate the diagnosis, ... [i]f the ALJ required further evidence ... he could have informed [appellant] of the need to submit further documentation." [70]

Second, the sole testimony at the hearing was by lay witnesses. Yet, most of appellant's original medical records are in French.[71] Other medical reports, though in English, are near-illegible.[72] These reports are extremely confusing. Under the circumstances, "it was incumbent on the administrative law judge to emphasize the desirability of producing, and to afford an opportunity to produce expert testimony, as to [appellant's] medical disabilities and their effect on [his] capacity to engage in any substantial, gainful work within the meaning of the Act." [73]

### B. *Reports of Treating Physicians*

■ Because a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight.[74] The administrative law judge assigned two reasons for discounting the unanimous conclusion of appellant's treating psychiatrists that appellant was disabled by schizophrenia. First, he found the doctors' opinions "to be unsupported by sufficient adequate underlying findings to prove a severe impairment at the point in question." [75] Second, he found them "inconsistent with Dr. Perron's report of 1974." [76]

A physical or mental impairment must "result[ ] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." [77] However, unlike a broken arm, a mind cannot be x-rayed:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [*sic*] in order to obtain objective clinical manifestations of medical illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and

**69.** *ALJ Decision, supra* note 3, at 6, J.App. 36.

**70.** 234 U.S.App.D.C. at 208, 727 F.2d at 1307; see also *Bluvband v. Heckler, supra* note 47, 730 F.2d at 895.

**71.** Most of these reports have been translated by the Social Security Administration. But see Letter from Dr. J. Perron (Mar. 3, 1980), J.App. 76.

**72.** See, e.g., Dr. J. Perron, Medical Report (June 30, 1980), J.App. 77–80.

**73.** *Cutler v. Weinberger, supra* note 65, 516 F.2d at 1286. Further, given the confused state of the medical records, the administrative law judge could have ordered a consultative examination of appellant or requested a medical advisor's assistance in review of the records. *Carrillo Marin v. Secretary of HHS,* 758 F.2d 14, 17 (1st Cir.1985); 20 C.F.R. § 404.1517 (1986). Indeed, under the Revised Mental Impairments

Listings, a consulting psychiatrist or psychologist *must* complete the medical portion of a case review, as well as any residual functional capacity assessment. Revised Mental Impairments Listings, *supra* note 61, 50 Fed.Reg. at 35065 (codified at 20 C.F.R. § 404.1520a (1986)); see Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460 § 8, 98 Stat. 1801 (codified at 42 U.S.C. § 421 (Supp. III 1985)).

**74.** *Narrol v. Heckler, supra* note 45, 234 U.S.App. D.C. at 207, 727 F.2d at 1306; *Bluvband v. Heckler, supra* note 47, 730 F.2d at 895; *Stawls v. Califano, supra* note 26, 596 F.2d at 1213; *Bilby v. Schweicker,* 762 F.2d 716, 719 (9th Cir. 1985).

**75.** *ALJ Opinion, supra* note 3, at 6, J.App. 68.

**76.** *Id.,* J.App. 68.

**77.** 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C) (1982).

observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.[78]

■ Clearly, the administrative law judge misconstrued this standard, and concomitantly undervalued the treating psychiatrists' reports. The record shows just such diagnostic techniques—psychiatric monitoring, interviews, and objective symptomology—as psychiatrists normally rely upon.[79] Indeed, the current regulations accord entirely with this standard, and instruct that "[t]he presence of a mental disorder should be documented primarily on the basis of reports from individual providers, such as psychiatrists and psychologists, and facilities such as hospitals and clinics."[80] The administrative law judge exacerbated his error by failing to develop the record.[81] Had the doctors been informed that more detail or underlying findings were necessary—records, clinical re-

ports, and test results that they may well have reviewed in preparing their summary reports[82]—then the information they supplied might well have met the administrative law judge's overly-stringent standards.[83]

The judge also discounted the medical reports—including those of Dr. Perron—as inconsistent with a statement in Dr. Perron's 1974 report[84] that "I saw [Poulin] for the first time in October 1972 when hospitalized on emergency into our regional mental hospital. He was disassociated and in a typical schizophrenic state. He has a rapid and fine recovery under neuroplegics only."[85] Appellant suggests that the administrative law judge seriously misinterpreted the reference to "rapid and fine recovery" as indicating recovery from schizophrenia; rather, appellant makes the plausible argument that Dr. Perron's statement, read in context, refers only to recovery from the acute episode that mandated the October 1972 hospitalization.[86] Both the ordinary course of acute and residual phases of schizophrenia[87] and Dr. Perron's other reports in the record[88] accord entire-

**78.** *Lebus v. Harris, supra* note 62, 526 F.Supp. at 60; see also *Lewis v. Weinberger,* 541 F.2d 417, 420 (4th Cir.1976); *Wyatt v. Weinberger,* 519 F.2d 1285, 1287 (4th Cir.1975); *Bilby v. Schweiker, supra* note 74, 762 F.2d at 719.

**79.** See generally, DSM–III, *supra* note 16, at 188–189. Oddly, the joint appendix includes one enigmatic example of the sort of evidence the administrative law judge apparently sought: a score sheet, dated September 1968, from an administration to appellant of a French version of the Minnesota Multiphasic Personality Inventory, a common psychological test. Joint Appendix 18–19; see Revised Mental Impairments Listings, *supra* note 61, 50 Fed.Reg. 35066 (codified at 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (1986)). This test, or its results, is nowhere else mentioned by the parties, the administrative law judge, or the District Court. The Secretary may wish to examine this evidence on remand.

**80.** Revised Mental Impairments Listings, *supra* note 61, 50 Fed.Reg. at 35067 (codified at 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (1986)). Under the revised regulations, "[t]he existence of a medically determinable impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings.... [S]igns are typically assessed by a

psychiatrist or psychologist and/or documented by psychological tests." *Id.* at 35066.

**81.** See Section III(A) *supra.*

**82.** See, e.g., Letter from Dr. J. Perron to Department of Health, Education & Welfare, *supra* note 67, at 2, J.App. 65.

**83.** *Narrol v. Heckler, supra* note 45, 234 U.S.App. D.C. at 207, 727 F.2d at 1307; *Bluvband v. Heckler, supra* note 47, 730 F.2d at 895.

**84.** Letter from Dr. J. Perron to Department of Health, Education & Welfare, *supra* note 67, J.App. 64.

**85.** *Id.* at 2, J.App. 65.

**86.** Brief for Appellant at 19. This ambiguity may be exacerbated by the report's confusion in tenses, due no doubt to the differences between French and English.

**87.** DSM–III, *supra* note 16, at 185, 189; Section III(C) *infra.*

**88.** Dr. J. Perron, Medical Report, *supra* note 72, J.App. 77–80; Dr. J. Perron, Medical Report (Jan. 31, 1977), J.App. 25–27.

ly with this interpretation of the 1974 report. On remand, the administrative law judge should consider this alternative view, which, if he finds it more plausible, would support rather than detract from the other medical records.[89]

## C. *Treatment of Mental Illness*

The Secretary's treatment of mental disabilities has long been criticized. Indeed, in 1984, Congress specifically amended the Social Security Act to require the Secretary to revise the criteria for assessing mental disorders "to realistically evaluate the ability of a mentally impaired individual to engage in substantial gainful activity in a competitive workplace environment."[90] The Secretary, in promulgating the mandated revisions, noted:

One of the major changes is in listing 12.03 where language has been added to ensure that the chronic schizophrenic individual who may have his or her symptoms attenuated by treatment but who still cannot work because of more subtle manifestations of his or her disorder will now meet the severity of the revised listing. This had been the major area of criticism and a principal area of deficiency in the former regulations.[91]

Two areas where these revised regulations are especially pertinent to this case involve the evidentiary requisites to a finding of disability[92] and the fact that one characteristic of mental illness is the presence of occasional symptom-free periods. Like the unique evidence appropriate for proving psychiatric disability, the normal course of mental illness distinguishes it from broken bones. The administrative law judge attached great—indeed, decisive—importance to appellant's ability to work in 1969, after the onset of his schizophrenia.[93] However, sporadic ability to work is typical of the disease, not inconsistent with disability:

While the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim. Unlike a physical impairment, it is extremely difficult to predict the course of mental illness. Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.[94]

The Secretary, in the revised listings, has explicitly acknowledged that total disability is not incompatible with this pattern of alternating active and residual phases. In the preamble to the rules, he observed that "[i]ndividuals who have a medically documented history of one or

---

89. The administrative law judge also interpreted the 1974 report as indicating "that the claimant was unable to work because of a lack of self-confidence, not because of any severe totally disabling mental impairment." *ALJ Decision, supra* note 3, at 6, J.App. 36; see Letter from Dr. J. Perron to Department of Health, Education, & Welfare, *supra* note 67, at 2, J.App. 65. The judge failed to consider the fact that lack of volition and self-confidence is a *symptom* of schizophrenia, not a reason for finding nondisability. *Branham v. Gardner,* 383 F.2d 614, 633 (6th Cir.1967); *Morrone v. Secretary of HEW,* 372 F.Supp. 794, 801 (E.D.Pa.1974); DSM–III, *supra* note 16, at 182–183. The Secretary should reevaluate this assessment on remand.

90. Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460 § 5, 98 Stat. 1801 (codified at 42 U.S.C. § 421 (Supp. III 1985)).

91. Revised Mental Impairments Listings, *supra* note 61, 50 Fed.Reg. at 35038.

92. See notes 42–64 *supra* and accompanying text.

93. *ALJ Decision, supra* note 3, at 6, J.App. 36.

94. *Lebus v. Harris, supra* note 62, 526 F.Supp. at 61; see also *Guzman Diaz v. Secretary of HEW,* 613 F.2d 1194, 1197 (1st Cir.1980); *Stawls v. Califano, supra* note 26, 596 F.2d at 1211; *Miller v. Heckler,* 747 F.2d 475, 478 (8th Cir.1984);

more episodes of acute symptoms ... may have a remission either induced by treatment or by living in a supportive environment," but emphasized that "[m]any such individuals remain disabled because they experience a return of symptoms and signs when they encounter stressful circumstances or when they leave the supportive environment." [95] The revised regulations specifically note that "[s]ome individuals may have attempted to work or may actually have worked during the period of time pertinent to the determination of disability." [96] Thus, mere ability to attempt employment during some symptom-free intervals does not negate disability,[97] at least for periods of inability to work.[98] In particular, the Secretary appropriately should consider both the length of time on the job and the reasons for leaving,[99] as well as "the likelihood, frequency, and severity of relapses in [appellant's] mental illness." [100]

■ The administrative law judge failed altogether to consider whether appellant's ability to work for a time in 1969, rather than being dispositive of his claim for disability benefits, in fact constituted only a period of temporary remission not incompatible with a finding of total disability. Both medical evidence [101] and lay testimony [102] support this possibility and bear on

the relevant factors here established.[103] On remand, the Secretary should reconsider the effect of appellant's 1969 employment in light of this evidence and his recognition that schizophrenia's basic pattern of alternating episodes of acute and less acute symptoms means that occasional amelioration of symptoms does not preclude a finding of total disability.[104]

## IV. Conclusion

For the reasons expressed above, we vacate the judgment below and remand the case to the District Court for remand in turn to the Secretary of the Department of Health and Human Services for further proceedings in accordance with this opinion and the revised regulations.

*Vacated and Remanded.*

---

*Dreste v. Heckler,* 741 F.2d 224, 226 (8th Cir. 1984); DSM–III, *supra* note 16, at 188–189.

**95.** Revised Mental Impairments Listings, *supra* note 61, 50 Fed.Reg. at 35040.

**96.** Revised Mental Impairments Listings, *supra* note 61, 50 Fed.Reg. at 35067.

**97.** *Powell v. Heckler,* 773 F.2d 1572, 1575–1576 (11th Cir.1985); *Ostrowski v. Heckler,* 609 F.Supp. 1109, 1114–1115 (N.D.Ill.1985); *Woods v. Schweiker,* [1984 Tr. Binder] Unemp. Ins. Rep. (CCH) ¶ 15127, at 2116 (N.D.Ala.1983).

**98.** *Powell v. Heckler, supra* note 97, 773 F.2d at 1575–1576.

**99.** Revised Mental Impairments Listings, *supra* note 61, 50 Fed.Reg. at 35067; see *Lashley v. Secretary of HHS, supra* note 58, 708 F.2d at 1053; *Ostrowski v. Heckler, supra* note 97, 609 F.Supp. at 1114; *Woods v. Schweiker, supra*

note 97, [1984 Tr. Binder] Unemp. Ins. Rep. (CCH) at 2110.

**100.** *Lebus v. Harris, supra* note 62, 526 F.Supp. at 61.

**101.** See Letter from Dr. Y. Rouleau, *supra* note 17, at 2, J.App. 69.

**102.** Tr. 52–55. The Secretary must give such lay testimony "serious and fair consideration." *Narrol v. Heckler, supra* note 45, 234 U.S.App. D.C. at 207, 727 F.2d at 1306; *Lashley v. Secretary of HHS, supra* note 58, 708 F.2d at 1054; *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981).

**103.** See notes 74–89 *supra* and accompanying text.

**104.** See *Stokes v. Schweiker,* 729 F.2d 932, 935 (3d Cir.1984) (remanding disability benefits case for reconsideration in light of new standards governing mental illness).