951 F.2d 1324
 293 U.S.App.D.C. 57
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Truman M. MURPHY, Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary, HHS.
 No. 90-5159.
 United States Court of Appeals, District of Columbia Circuit.
 Jan. 10, 1992.
 
 Before BUCKLEY, STEPHEN F. WILLIAMS and D.H. GINSBURG, Circuit Judges.
 
 JUDGMENT
 PER CURIAM
 
 1
 This appeal was submitted on the record from the United States District Court for the District Court of Columbia and on the briefs and arguments of counsel. Upon full review of the issues presented, the court is satisfied that appropriate disposition of the appeal does not warrant an opinion. See D.C.Cir.Rule 14(c).
 
 
 2
 For reasons indicated by the district court in its April 6, 1990 Order and Memorandum Opinion denying review of the Secretary's denial of benefits to Mr. Murphy, and as further explained in the attached memorandum, it is
 
 
 3
 ORDERED and ADJUDGED by the court that the district court's April 6, 1990 decision be affirmed.
 
 
 4
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15. This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 I. BACKGROUND
 
 5
 Truman M. Murphy appeals from a decision of the district court (Gesell, J.) affirming the Secretary of Health and Human Services' denial of his claim for statutory blindness benefits. Murphy v. Sullivan, No. 89-2695, mem. op. (D.D.C. Apr. 6, 1990). Mr. Murphy is blind in his left eye. His right eye suffers from glaucoma and from a retinal vein occlusion. As Mr. Murphy is not insured for general disability benefits under the Social Security Act, 42 U.S.C. §§ 301 et seq. (1988) ("SSA"), his sole claim is for statutory blindness benefits under the SSA, for which he was insured through the end of 1981. To be entitled to statutory blindness benefits, a claimant must have visual acuity of 20/200 or worse in the better eye with the use of a corrective lens. See 42 U.S.C. § 416(i)(1)(B).
 
 
 6
 A full history of the administrative and judicial proceedings in this case is set out in the district court's memorandum opinion. See Murphy, mem. op. at 1-2. In brief, Mr. Murphy applied for general disability benefits on December 17, 1985. After careful review of the evidence, the Secretary of Health and Human Services ("Secretary"), an administrative law judge ("ALJ"), and the Social Security Administration's Appeals Council all concluded that Mr. Murphy did not meet the statutory blindness requirements prior to December 31, 1981. Mr. Murphy petitioned the district court for review of the Secretary's decision denying him disability benefits. On April 6, 1990, the court affirmed the Secretary's decision.
 
 
 7
 In reaching its conclusion, the court relied on the results of numerous visual tests taken by Mr. Murphy during the decade 1977-1987. Prior to November 1981, his vision had always tested between 20/20 and 20/100. On November 3, 1981, it was tested at 20/200, the threshold level for statutory blindness. After this test but before the end of 1981, Mr. Murphy's vision tested better than 20/100 at least three times. Early in 1982, his vision twice tested at 20/70 and twice at 20/200 or worse. Between 1983 and 1986, it tested substantially better than 20/100. Not until 1987 did his vision test consistently at worse than 20/200. The court considered, but dismissed, certain evidence in the administrative record consisting of a statement by Mr. Murphy's physician, Dr. Kenneth Zaslow, that it was "very likely" that Murphy was statutorily blind during the last months of 1981.
 
 
 8
 Mr. Murphy has raised three challenges to the district court's decision: (1) the district court's determination is not supported by substantial evidence, and it failed to give proper weight to the testimony of Dr. Zaslow and another medical witness; (2) the court erred in accepting a post-hoc rationalization attributing the November 3, 1981 test results to his failure to take his eye medication that day; and (3) the Secretary's regulation establishing a twelve-month blindness requirement is invalid.
 
 II. DISCUSSION
 
 9
 Judicial review of the Secretary's final decision is limited by the SSA to a determination of whether the decision, based on the whole record, is supported by substantial evidence. See 42 U.S.C. 405(g). For purposes of review, the Secretary's findings of fact are to be treated as conclusive. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 10
 The SSA defines blindness as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 42 U.S.C. § 416(i)(1)(B). The Secretary found that Mr. Murphy had failed to meet this statutory requirement.
 
 
 11
 Mr. Murphy argues that this decision was unsupported by substantial evidence for several reasons. He notes, first, that he tested at 20/200 in November 1981, within the insured period, and tested twice again above the statutory requirement in early 1982. He argues that the statute does not require that he test consistently at 20/200 or below. In his view, the fluctuating nature of his visual impairment should not change the fact that he had met the statutory blindness requirement; and while it is not unusual for ailments to vary in intensity from day to day, a temporary reduction in severity of an ailment is not equivalent to a cure. Mr. Murphy maintains, moreover, that we have accepted this principle in Poulin v. Bowen, 817 F.2d 865 (D.C.Cir.1987), and Pagan v. Bowen, 862 F.2d 340 (D.C.Cir.1988).
 
 
 12
 We disagree. Poulin and Pagan are factually distinct from the instant case. They both dealt with determinations of entitlement to disability benefits as a result of schizophrenia. Evidence of such mental impairment, by its nature, requires the consideration of many imprecise variables and places a corresponding premium on flexibity. In the case of blindness, however, the Secretary is required to apply a readily verifiable statutory criterion--the 20/200 visual accuity test. In Poulin, we noted that "unlike a broken arm, a mind cannot be x-rayed," 817 F.2d at 873, and criticized the ALJ for having failed to develop the kind of record required to assess a disability claim based on mental illness. Id. at 870-73. In Pagan, we were again faced with a gap in the clinical data, and we remanded the case for further proceedings. 862 F.2d at 351.
 
 
 13
 In our view, Poulin and Pagan are consistent with the Secretary's actions in this case. In particular, Poulin demonstrates the importance of the kind of clinical data on which the Secretary was able to rely here. Poulin involved a situation where the clinical record was sparse. Thus, we noted that "[t]he most glaring among the evidentiary problems is the absence of information concerning the last 19 months of Poulin's eligibility for benefits." Poulin, 817 F.2d at 871. In the absence of objective clinical data, we felt it inappropriate for an ALJ to fail to consider the possibility of a temporary remission. Here, by contrast, the Secretary's denial of benefits is supported by a complete record of timely clinical evaluations.
 
 
 14
 Mr. Murphy also argues that the Secretary failed to give adequate weight to the testimony of his treating physician, Dr. Zaslow, and of Mr. Fred Mettlach, a visual impairment coordinator with the Veterans Administration Medical Center. Dr. Zaslow testified that it was "very likely" that Mr. Murphy was blind during the statutory period; and Mr. Mettlach stated that in his view, someone with a visual acuity level of 20/300 in March 1982 would have had a level of no better than 20/200 in December 1981.
 
 
 15
 While it is well settled that the Secretary must accord "substantial weight" to reports of a treating physician because of the familiarity he is likely to have with the patient's condition, Poulin, 817 F.2d at 873, "the ALJ is not bound by expert medical opinion on the issue of disability" if he offers "clear and convincing reasons" for departing from the physician's opinion. Fife v. Heckler, 767 F.2d 1427, 1431 (9th Cir.1985). Here, the district court found that the medical testimony was contradicted by the other medical evidence in the case, namely, the many visual tests that indicated that Murphy's visual acuity was better than 20/200 both during the insured period and immediately thereafter. "[T]he doctor's opinion was controverted by other facts which the ALJ reasonably accepted." Murphy, mem. op. at 4. This conclusion, of course, applies with equal force to Mr. Mettlach's testimony.
 
 
 16
 Mr. Murphy's next challenge is to what he describes as the district court's "uncritical[ ] accept[ance] [of] the Secretary's argument, raised for the first time in the district court, that appellant tested at 20/200 on November 3, 1981 only because he had not taken his eye medication that day." Brief for Appellant at 20. He states that because it was not raised in any of the administrative hearings, use of this evidence contradicts the statutory mandate that review of the Secretary's actions be based solely on the record made before the Secretary. See 42 U.S.C. § 405(g). We do not accept the argument that the district court relied upon this evidence. The court only mentioned the medication in a footnote, which states that the evidence is "[i]n addition" to the other evidence, and notes that this "may have affected his visual accuity." See Murphy, mem. op. at 4 n. 3 (emphasis added). This speculation was clearly an aside and cannot be considered a basis for the court's conclusion.
 
 
 17
 Finally, Mr. Murphy complains about the propriety of a definition of blindness promulgated by the Secretary that repeats the statutory visual acuity test of 20/200 or less set forth in 42 U.S.C. § 416(i)(1)(B) and then incorporates a requirement that the disability "must have lasted or must be expected to last for a continuous period of at least 12 months." See 20 C.F.R. § 404.1509 (1991) (incorporated in 20 C.F.R. § 404.1581). Mr. Murphy argues that the SSA does not require the blind to meet a durational test. As the district court and the Secretary did not base their determinations on this regulation, we do not pass on its propriety.
 
 
 18
 Having reviewed Mr. Murphy's arguments, we conclude, as did the district court, that the Secretary's denial of disability benefits is supported by substantial evidence. Given the number of times, both before and after the expiration date of his insurance, in which Mr. Murphy's right eye tested better than 20/200, we see no basis for setting aside the Secretary's conclusion that he did not qualify for disability benefits. The only clinical evidence to the contrary within the statutory period was the single time he tested at 20/200, and the Secretary could properly find that this single test result was anomalous.
 
 
 19
 For the foregoing reasons, the decision of the district court is
 
 
 20
 Affirmed.