# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

REGINA MERIWETHER,
            Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,
            Defendant.

Civil Action No. 12-cv-67 (KBJ-AK)

## REPORT AND RECOMMENDATION

This case was referred to the undersigned for full case management, including a Report and Recommendation pursuant to Local Rule 72.3. (June 7, 2013 Order of Referral [10].) Pending before the undersigned are Plaintiff's Motion for Reversal of Judgment ("Pl.'s Mot. to Reverse") [6] and Memorandum in support thereof ("Pl.'s Mem.") [6-1] and Defendant's Motion for Judgment of Affirmance ("Def.'s Mot. to Affirm") [7] and Memorandum in support thereof ("Def.'s Mem.) [7-1]. Plaintiff Regina Meriwether ("Ms. Meriwether") has exhausted her administrative remedies. She now moves for a reversal of the October 28, 2010 decision of the Administrative Law Judge ("ALJ") denying her supplemental security income ("SSI") benefits on the grounds that the ALJ both failed to develop the administrative record fully and erroneously assessed her residual functional capacity. (Pl.'s Mem. at 4-8.) Alternatively, Ms. Meriwether moves to have the matter remanded to the Social Security Administration (SSA) for a new administrative hearing. *See* 42 U.S.C. § 405(g.) Defendant Michael J. Astrue, Commissioner of the SSA, moves to affirm the ALJ's decision on the grounds that it is supported by substantial evidence, that the ALJ sufficiently developed the administrative record, and that

1

the ALJ properly evaluated Ms. Meriwether's residual functional capacity. (Def.'s Mem. at 9-12.)

## I. BACKGROUND

On the date of her supplemental security income ("SSI") application, Ms. Meriwether was a forty-one year old female who lived in Washington, DC. (AR 28.)[1] Ms. Meriwether spoke English and graduated from high school. (AR 40, 113.) Her past employment included work as a file clerk and cashier at an automobile dealership and as a cashier at a liquor store. (AR 109, 123-30, 168.) She has not worked or earned any income since 2004. (AR 41, 90, 92.) The ALJ found that she had not engaged in substantial employment since October 27, 2008, the date of her application. (AR 20, 28, 41.) Ms. Meriwether has a diagnosis of bipolar disorder, schizophrenia, and substance abuse disorder. (AR 23.) Ms. Meriwether acknowledged that her substance abuse continued for many years, although she testified at her administrative hearing that she had been sober since at least March 11, 2010. (AR 48, 59.) Finally, Ms. Meriwether has Hepatitis B. (AR 23, 45-46.) Meriwether applied for SSI benefits on October 27, 2008, alleging in her amended[2] complaint that she was disabled and stopped working on that same date. (AR 18, 83.)

The SSA issued its initial denial of SSI benefits on February 12, 2009, and again upon reconsideration on May 20, 2009. (AR 18, 63, 67.) Meriwether filed a written request for a hearing on June 22, 2009 pursuant to 20 C.F.R. 416.1429 *et seq.* (AR 18.) Meriwether appeared and testified on September 27, 2010 at a hearing before an ALJ. (AR 18.) She did not have representation at this hearing. A vocational expert did testify. (AR 18, 35-60.) On October 28,

---

[1] References to the Administrative Record [3] are herein noted as (AR.)
[2] Meriwether initially alleged that her disability began on January 1, 2002 but amended the alleged onset date to October 27, 2008, the date of her application for SSI. 20 C.F.R. § 416.501 states that SSI payments may not be made for any period that precedes the first month following the date on which an application is filed, or, if later, the first month following the date all conditions are met for eligibility.

2010, the ALJ issued his Decision finding that while Ms. Meriwether's bipolar disorder, schizophrenia, and substance abuse disorder were severe impairments, she nevertheless was not disabled within the meaning of 42 U.S.C. § 1382c(a)(3)(A) (AR 18-30.) The SSA Commissioner adopted the ALJ decision on November 16, 2011, when the Appeals Council denied Ms. Meriwether's request for review. (AR 1-5.) Ms. Meriwether subsequently filed this action, pursuant to 42 U.S.C. § 405(g).

## II. <u>STANDARD OF REVIEW</u>

District courts review final decisions of the Social Security Commissioner pursuant to Section 205(g) of the Social Security Act. 42 U.S.C. §405(g) provides for a review of the administrative proceedings record to determine whether there is substantial evidence in the record to support the Commissioner's findings. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004); *Smith v. Bowen*, 826 F.2d 1120 (D.C. Cir. 1987). "The court must uphold the [Commissioner's] determination if it is supported by substantial evidence and is not tainted by an error of law." *Smith*, 826 F.2d at 1121 (citation omitted). "Substantial evidence" under the Social Security Act "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). It is "more than a scintilla, but . . . something less than a preponderance of the evidence." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) (citation omitted).

The reviewing court must carefully scrutinize the "entire record to determine whether the Commissioner, acting through the [ALJ], has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Lane-Rauth v. Barnhart*,

437 F. Supp.2d 63, 65 (D.D.C. 2006) (quoting *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004)) (internal quotation marks omitted). *See also Martin v Apfel*, 118 F.Supp.2d 9, 13 (D.D.C. 2000) (citations omitted) (The ALJ must "explain sufficiently the weight he has given to certain probative items of evidence" so that the reviewing court is not "left guessing as to how the ALJ evaluated probative evidence.").

In *Brown v. Bowen*, the court stated the following:

Our review in substantial-evidence cases calls for careful scrutiny of the entire record.

*            *            *

The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored.

*            *            *

The ALJ is certainly entitled to weigh conflicting opinions and to make his own assessment of their credibility. We merely hold that determination must be made within and according to governing regulations.

794 F.2d at 705-09 (citations omitted). *See also Martin*, 118 F.Supp.2d at 13 (citations omitted) (While the ALJ makes findings of fact and resolves conflicts in the evidence, "[the] ALJ cannot merely disregard evidence which does not support his conclusion.").

"Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Davis v. Shalala*, 862 F.Supp.1, 4 (D.D.C. 1994) (citation omitted.) If the court determines however that the Commissioner's findings are supported by substantial evidence and in accordance with applicable law, they must be treated as conclusive and affirmed. 42 U.S.C. §405(g); *Butler*, 353 F.3d at 999.

## III. <u>DETERMINATION OF DISABILITY</u>

Under the Social Security Act, a disability is defined as the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

*         *         *

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(1), (2)(A). A physical or mental impairment is defined as an impairment that results from "anatomical, physiological and psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3.)

Evaluation of a claim of disability involves an assessment of the following five steps: 1) whether the individual is working; 2) whether the individual has a "severe" impairment; 3) whether the impairment meets or equals a listed impairment contained in Subpart P to Appendix 1 to 20 C.F.R., part 404; 4) whether the claimant can return to his past relevant work; and if not, 5) whether the claimant can perform any other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920.[3]

## IV. <u>ANALYSIS OF THE ALJ's OCTOBER 28, 2010, DECISION</u>

The issue before the Court is not whether Ms. Meriwether is disabled but whether the ALJ's decision is supported by substantial evidence in the record and the ALJ correctly applied the law in reaching his decision. Ms. Meriwether challenged the ALJ's October 28, 2010,

---

[3] During the first four steps, the claimant bears the burden of proof but at the fifth step, the burden shifts to the Secretary to show that the claimant, based upon his age, education, work experience, and residual functional capacity, is capable of performing gainful work. *See Brown*, 794 F.2d at 706.

5

decision on the grounds that the ALJ failed to fully develop the administrative record and that the ALJ erroneously assessed Ms. Meriwether's residual functional capacity. (Pl.'s Mem. at 4, 8.) Pretermitting Ms. Meriwether's challenges, the undersigned will briefly review the ALJ's determination regarding disability.

### A. Five Steps to Determine Disability

In his October 28, 2010, Decision, the ALJ considered the five steps for determining disability, as summarized below.

### 1. Step 1

The ALJ found that Ms. Meriwether had not engaged in substantial gainful activity since October 27, 2008, the application date. (AR 20.)

### 2. Step 2

The ALJ found that Ms. Meriwether had the following severe impairments: bipolar disorder, schizophrenia, and substance abuse disorder, and, further, that Meriwether's Hepatitis was not disabling, as it is stable with medication. (AR 20-23.) The ALJ did, however, take into account the secondary symptoms of Hepatitis, such as pain and fatigue, when assessing Meriwether's Residual Functional Capacity ("RFC"). (AR 23.)

### 3. Step 3

The ALJ found that Ms. Meriwether did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Par 404, Subpart P, Appendix 1. (AR 26-27.)

### 4. Residual Functional Capacity

After denying Step 3 and before considering Step 4, the ALJ had to determine Ms. Meriwether's RFC, which is determined on the relevant evidence in the record and defined as

"the most [an individual] can do despite [her] limitations." 20 C.F.R. § 416.945(a.) The ALJ found that Ms. Meriwether had a residual functional capacity to perform medium work. (AR 27.) This involves the ability to lift up to 50 pounds occasionally and 25 pounds frequently, and the ability to stand or walk up to eight hours in an eight-hour day. 20 C.F.R. § 416.967(c.) Meriwether can "occasionally climb stairs and ramps, balance, stoop, and kneel." (AR 27.)

The ALJ determined that Ms. Meriwether had numerous limitations, finding that she "cannot climb ladders, ropes or scaffolds, be exposed to hazardous heights or hazardous moving machinery, or be exposed to extreme temperature changes" as a precautionary measure because of her past substance abuse and current bipolar and schizophrenia diagnoses. (AR 27.) Meriwether also cannot crawl, can only perform low stress work, requiring no more than moderate[4] attention, concentration, persistence, and pace. (AR 27.) She must avoid excessive vibration, humidity, or wetness. (AR 27.)

The ALJ found moderate limitations when it came to time, place, and manner of her work, including

> [C]ompleting a normal workday or workweek without interruptions from psychological limitations...accepting instructions and responding appropriately to criticism from supervisors…interacting and getting along with co-workers and peers…[and] she should have no regular direct immediate contact with the general public.

(AR 27.)

### 5. Step 4

At Step 4, the ALJ found that Meriwether is unable to perform any past relevant work, since she can only perform "low stress, routine work, requiring no more than moderate attention and concentration, persistence and pace." (AR 28.)

---

[4] The ALJ's decision defined moderate as "to preclude the attention and concentration required for high-stress work and complex work, but which is not at a level of severity for less stressful work of an unskilled nature involving using common sense while following instructions." (AR 27.)

**6. Step 5**

In connection with his Step 4 analysis, the ALJ determined that although Meriwether was unable to perform any past relevant work, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 28.)

**B. Plaintiff's Challenges to the ALJ's Decision**

**1. Failure to Fully Develop the Administrative Record**

Ms. Meriwether argues that the ALJ failed to develop fully the administrative record in three different respects. (Pl.'s Mem. at 4-8). First, Ms. Meriwether contends that the record does not contain a "complete medical history." (Pl's Mem. at 5-6.) Second, she alleges that the record does not contain any medical evidence after February 10, 2009 and that this created a prejudicial evidentiary gap. (Pl's Mem. at 5-6.) Finally, Ms. Meriwether claims that the ALJ failed to obtain a consultative exam despite a promise to do so. (Pl.'s Mem. at 4-8.)

**a. Medical Records Covering a Twelve-Month Period From Alleged Onset Date**

Ms. Meriwether highlights that her amended onset date of alleged disability is October 27, 2008, the same date she filed her application for SSI. (Pl.'s Mem. at 5-6.) She claims that the most recent medical evidence in the record is from February 10, 2009, fewer than four months from her alleged onset of disability. (Pl.'s Mem. at 5.) Ms. Meriwether contends that since the record fails to contain evidence covering the twelve-month period *subsequent* to her alleged onset of disability, the ALJ "failed in his duty to develop a 'complete medical history' that contains records covering the relevant period of disability." (Pl.'s Mem. at 6.)

The Social Security Act, however, defines "complete medical history" as medical evidence covering the twelve-month period *preceding* a claimant's alleged onset date of disability, stating:

> In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability.

42 U.S.C. § 423(d)(5)(B.) *See also* 20 C.F.R. § 416.912(d) (clarifying the term of art "complete medical history," which is defined as "at least the twelve months preceding the month in which you file your application").

Ms. Meriwether has misconstrued the statute, and mistakenly believes that the ALJ is statutorily required to gather at least twelve months of medical information subsequent to the alleged onset of disability. This is incorrect.

Moreover, Ms. Meriwether changed her alleged onset date from January 1, 2002 to October 27, 2008, the same date that she filed her application for SSI. (AR 41, 83, 108.) In this event, 20 C.F.R. § 416.912(d)(2) makes clear that "if you say that your disability began less than twelve months before you filed your application, we will develop your complete medical history beginning with the month you say your disability began unless we have reason to believe that your disability began earlier."

The medical evidence in the record begins December 3, 2007, not quite twelve-months prior to the alleged onset of disability date. (Tr. 171-445.) Nevertheless, the treatment note from Anchor Mental Health dated December 3, 2007 notes "this is consumer's first visit" and that Ms. Meriwether "has been [seen] at Hunt Clinic for psychiatric disorder in 2006, but reported no

9

other psychiatric [treatment]" (AR 172.) Medical evidence from the Hunt Clinic is not in the record.

Nevertheless, considering 20 C.F.R. § 416.912(d)(2) and the fact that the record contains eleven months of records prior to the alleged date of onset, Ms. Meriwether was not prejudiced by the fact that the record does not contain a full twelve months of medical history preceding her alleged onset date.

### b. The Lack of Medical Records from February 2009 to October 2010

While the term of art "complete medical history" only requires medical evidence covering the twelve month period preceding a claimant's alleged onset date of disability, that standard is a floor, not a ceiling. *See* 42 U.S.C. § 423(d)(5)(B) ("The Commissioner…shall develop a complete medical history of *at least* the preceding twelve months for any case in which a determination is made that the individual is not under a disability.") (emphasis added). Ms. Meriwether appears to conflate the requirements of 42 U.S.C. § 423(d)(5)(B) with the requirements that the ALJ certainly has a duty to fully investigate all matters at issue and to develop a medical history that covers the relevant period of disability. *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987). That is, if medical records from only the twelve months prior to the alleged date of onset of disability will not fully inform the ALJ's decision on whether or not the claimant is disabled within the meaning of the Act, he has "the affirmative duty to investigate fully all matters at issue to develop the comprehensive record requisite for a fair determination of disability." *Id.*

Ms. Meriwether opines that the records "contains no medical evidence from any health care provider subsequent to February 2009." (Pl's Mem. at 6.) It is true that there are no medical

10

records from Anchor Mental Health, Ms. Meriwether's treating source, after February 10, 2009. The record does, however, contain sixteen pages of medical evaluations dated after February 10, 2009. (AR 418-29.)

Specifically, these sixteen pages include three Medical Evaluation/Case Analyses, which are the reports of different doctors who read through Ms. Meriwether's medical records and provided their opinions on her diagnoses; none of these doctors visited with Ms. Meriwether in person. The first, conducted by Dr. Esther Pinder, MD, on April 30, 2009, contains four sentences and, without explanation, states that Ms. Meriwether has non-severe mental impairments. (AR 435.)  The second, from Dr. Gemma Nachbahr, Ph.D., on May 7, 2009 contains one sentence reviewing the records up until January 7, 2009, and affirms the findings of Dr. Patricia Cott's Mental Residual Functional Capacity Assessment. (AR 436.)  The third Medical Evaluation/Case Analysis, from Dr. John Parker on May 18, 2009, is also one page and determines that the "DDS decision is reasonable." (AR 445.)

There are also two Disability Worksheets that simply tabulate the medical records in the file and offer no analysis of Ms. Meriwether's conditions. (AR 430-34; 437-39.)  There are, finally, two documents again from Dr. John Parker, dated May 7, 2009: a Medical Consultant's Review of the RFC Assessment, affirming the prior assessment and a Medical Consultant's Review of the Psychiatric Review Technique, affirming the Psychiatric Review Technique. (AR 440-44.)

Therefore, it is true that there are documents dated later than February 2009, leaving a minimum sixteen month gap between the most recent information in the record and Ms. Meriwether's hearing before the ALJ.  It is clear, however, that the last in-person review of Ms. Meriwether that is in the record was conducted on February 10, 2009, leaving a nineteen month

gap between the latest medical evidence and Ms. Meriwether's appearance at her hearing in front of the ALJ on September 27, 2010, and a twenty month gap between the last medical evidence in the record and the ALJ's October 28, 2010 decision.

For the reasons discussed below, the undersigned agrees that this twenty month evidentiary gap prejudiced Ms. Meriwether and recommends that the case be remanded for better development of the record during this time period.

### The ALJ Had a Heightened Duty to Develop the Record in This Case

The D.C. Circuit has held that when a claimant suffers from mental illness, lacks representation at an administrative hearing, and has difficulty understanding English, this combination of debilitating factors heightens the duty of the ALJ to develop the administrative record. *Poulin*, 817 F.2d at, 870. The duty is initially heightened, under both agency regulations and due process principles, and becomes "especially strict" when a claimant does not have representation at a hearing before an ALJ. *Id.* The duty is heightened once more when the claimant "is the victim of a mental illness that may decrease his ability to represent himself." *Id.* at 870-71.

In *Poulin*, the claimant at issue, similar to Ms. Meriwether, did not have representation at his hearing and suffered from schizophrenia. *Id.* at 867. He was not a native English speaker and could only "speak and understand some English." *Id.* This trifecta of disabilities led the D.C. Circuit to conclude that the ALJ's duty of record-development "most certainly rises to its zenith, and absent such record-development the Secretary's decision cannot stand." *Id.* at 871.

Although Ms. Meriwether is a native English speaker, Dr. Eugene Miknowski, who performed a consultative exam of Ms. Meriwether, found that she had "very poor intelligence"

12

and "borderline intelligence." (AR 401.)  Dr. Giuseppe Scarcella, who conducted a psychiatric consultative examination of Ms. Meriwether noted that she was "vague and occasionally perplexed…she exhibited labile affect, poor insight and judgment" and manifested "inability to maintain sustained attention and concentration." (AR 361.)  Moreover, Ms. Meriwether has suffered from at least three concussions. (AR 44.)

Taken together, the undersigned believes that Ms. Meriwether's very poor intelligence, concentration, and judgment could limit her ability to communicate and understand, thereby affecting her ability to represent herself at the hearing.  While Ms. Meriwether's cognitive limitations are perhaps not analogous to Mr. Poulin's moderate grasp of the English language, they are serious enough that they have implications for the ALJ's duty to develop the record, which was at its peak in this case.


### The ALJ's Decision

The ALJ concluded that Ms. Meriwether's admitted substance abuse was a material contributing factor to Ms. Meriwether's impairments, disqualifying her from SSI, pursuant to 42 U.S.C. § 423(d)(2)(C).  (AR 25, 30.)  The ALJ also found that Ms. Meriwether was at times not treatment compliant, also disqualifying her from SSI.  *Id.*  Pursuant to 20 C.F.R. § 416.935, the ALJ found that if she remained free from drugs and alcohol and treatment compliant, Ms. Meriwether would not be found to be disabled.  In the ALJ's words, "she would be able to work" (AR 25.)

Evidence in the record illustrates the sporadic nature of Ms. Meriwether's treatment compliance.  (AR 176-360.)  She failed to attend appointments at Anchor Mental Health for both good cause (incarceration, hospitalization for suicidal thoughts) and at times failed to show

13

without explanation.  (AR 419-29.)  The ALJ concluded that Ms. Meriwether's "failure to comply with recommended treatment supports an inference [the] claimant's symptoms are not as severe as asserted.  A claimant must follow prescribed treatment if treatment will restore ability to work." (AR 25.)

Contrary to the ALJ's determination, however, the medical evidence in the record makes clear that Ms. Meriwether's symptoms are in fact severe, and that her mental impairments contributed to her treatment non-compliance.  For example, Dr. Scarcella's determined that Ms. Meriwether has "memory impairment…and manifested inability to maintain sustained attention and concentration" and should be considered unable to manage benefits or other responsibilities; this presumably includes administering her own treatment plan.  (AR 363.)  Anchor Mental Health notes that, even when treatment compliant and sober, Ms. Meriwether at times continued to experience visual and auditory hallucinations paranoia, persecutory feelings, and mood swings, all of which interfered with her ability to function.  (AR 237.)  Therefore, it appears that Ms. Meriwether's symptoms were severe even when treatment compliant and that her intelligence and memory impairments directly resulted in difficulty managing her treatment schedule.

Moreover, it is not clear that Ms. Meriwether's treatment plan was successful.  The ALJ highlights that at certain intervals, her symptoms lessened or improved when taking medication. (AR 25-26.)  It appears that Ms. Meriwether simultaneously experienced positive and negative gains while sober and treatment compliant. For example, she experienced side effects on Seroquel, the primary medication doctors have prescribed for her schizophrenia, complaining of extreme fatigue and an inability "to get anything done." (AR 223.)  She continued to experience auditory and visual hallucinations, angry outbursts, and was listed as only "slightly improving"

14

on January 11, 2008, after a month of sobriety. (AR 237.) While still attending twelve step meetings and remaining treatment compliant, on April 22, 2008, Ms. Meriwether continued to experience persecutory and paranoid thoughts. (AR 208.) On January 26, 2009, Anchor Mental Health listed "patient response to medication" as minimal to none, her psychiatric condition unchanged, and her concurring disorders as worsening, although she reported that she did not have hallucinations. (AR 422.) She was nevertheless restarted on 300mg of Seroquel to treat these problems, but there is no documentation in the record as to whether medication lessened Ms. Meriwether's symptoms. (AR 422.)

Her difficulty, if not inability, to manage her own treatment schedule, as well as the questionable efficacy of her treatment program, casts doubt on the notion that Ms. Meriwether would have been able to work had she remained treatment compliant and abstained from drugs and alcohol. Perhaps more problematic, however, is the fact that the ALJ based his determination on an incomplete record. He did not solicit evidence from any part of the twenty month evidentiary gap period, and Ms. Meriwether was not afforded a thorough hearing. Therefore, because the ALJ's determination relied upon an incomplete record, and because his determination contained several factual errors, the undersigned cannot say whether or not there is substantial evidence in the record to support the ALJ's decision.

### The ALJ Failed to Conduct a Thorough Hearing

As stated above, the ALJ's disability determination relied upon evidence dated between December 2007 and February 2009. The ALJ's decision did not consider the twenty month evidentiary gap in the record between February 2009 and October 2010, and Ms. Meriwether's hearing was too cursory to remedy the evidentiary gap. The transcript of the hearing suggests

15

that the ALJ undertook a superficial review of Ms. Meriwether's medical history. The ALJ asked only a few questions about Ms. Meriwether's mental illness, how she believed her illness would affect her ability to work, if she had applied for or obtained any work, any side effects or difficulty with her treatment plan, and the extent of her concentration issues. The ALJ did not solicit medical records or any other materials to supplement the testimony given at the hearing. If a "[m]ore probing questioning…would undoubtedly have provided more probative information" then the ALJ has not fulfilled his duty to conduct a thorough hearing. *Poulin*, 817 F.2d at 871 (quoting *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1052 (6th Cir. 1983)).

During the hearing, the ALJ at times interrupted Ms. Meriwether and often changed the subject. Although Ms. Meriwether provided many clues that her condition had remained problematic, or had perhaps worsened, the ALJ often did not ask follow-up questions. Moreover, the ALJ did not alert Ms. Meriwether that she was allowed to or might wish to supplement the record with additional information from February 2009 to September 2010. *See Contra Mandziej v. Chater*, 944 F.Supp. 121, 132 (D. NH 1996) (highlighting that the ALJ solicited additional medical records and evidence from the claimant in order to remedy a potential evidentiary gap.)

Perhaps the most critical oversight in the ALJ's decision is that he incorrectly identified August 11, 2010 as the date Ms. Meriwether ceased using drugs and alcohol. (AR 25, 48.) The ALJ confused the date of Ms. Meriwether's last urinalysis test—administered on August 11, 2010 by her drug rehabilitation program—for her sobriety date. (AR 47, 48, 59.) In actuality, Ms. Meriwether entered drug rehabilitation on March 11, 2010, and she testified at the hearing that she had remained sober ever since. (AR 48.)

As a result of this oversight, the ALJ did not investigate how Ms. Meriwether's extended period of sobriety affected her. He did not inquire as to the severity of Ms. Meriwether's symptoms after becoming sober, if she remained treatment compliant while sober, or how her condition changed—if at all—since March 2010.

The Commissioner, in his brief, also repeats this false sobriety date, claiming that "Plaintiff confirmed that she was continuously using crack cocaine and other substances until August 11, 2010" ((Def.'s Mem. at 9.) This is incorrect, and Ms. Meriwether attempted to clarify her date of sobriety during the hearing, while the ALJ ended the hearing prematurely, without listening to Ms. Meriwether's protestations about the date of her sobriety.

> **ALJ:** Alright, is it raining out there right now?
> **Ms. Meriwether:** No, it was drizzling
> **ALJ:** Okay, well, I'll let you go before it starts coming down
> **Ms. Meriwether:** Yeah, I'll get a ride, I don't know
> **ALJ:** Take care of yourself, the good news is staying off the, you know, the—
> **Ms. Meriwether:** The drugs
> **ALJ:** --the polysubstance. That's going to make a world of difference for you, it really will, okay, alright. Don't go near the drugs and alcohol.
> **Ms. Meriwether:** No, I've been clean from that for months. The 11[th], the clean date, I came home August 11[th] but I guess I stopped in March the 11[th]
> **ALJ:** Alright, thank you very much
> **Ms. Meriwether:** Bye
>
> [end of hearing]

(AR 59.)

The ALJ also failed to probe the extent to which Ms. Meriwether was managing her mental illness symptoms. There are clues in the transcript that Ms. Meriwether continued to experience symptoms that required increased and additional medication. During the hearing, Ms. Meriwether stated that her Seroquel dose has been increased to 400mg, indicating that she still sees a clinician and, presumably, continued to have difficulty managing her bipolar disorder and

17

schizophrenia. (AR 50.)  There is no medical evidence in the record to explain several unresolved questions, including when the medication was increased, by whom, for what reasons, and any resulting side effects.  Ms. Meriwether also indicated that her clinician wishes to add more medications to her treatment plan, after Abilify—a medication for which there are no entries in the record—apparently did not work.

> **ALJ:** Okay, are you still on the Zyprexa?
> **Ms. Meriwether:** No, she gave me, now I'm on Seroquel 400 and my next appointment to see her, I think, is next week or two weeks.  She wants to give me, put me on some other medicine, try me anyway.
> **ALJ:** Well, you were on the Trazadone.  Are you still on that?
> **Ms. Meriwether:** Uh-uh
> **ALJ:** No.
> **Ms. Meriwether:** I was on that, they gave me Abilify, I don't do that no more.
> **ALJ:** You came off Abilify?
> **Ms. Meriwether:** Yeah, that made me sick a little so she just narrowed it down to Seroquel 400 and she's going to start me on something else on my next appointment with her for the mood change, for the different personalities.  She says she wants to try me on something else.  I go see her faithfully.

(AR 50.)

At this point, Ms. Meriwether has introduced the possibility of "different personalities", or is possibly referring to her auditory or visual hallucinations.  She also mentions her mood swings, well-documented throughout the record.  She also tells the ALJ that she sees her clinician "faithfully," although her treatment non-compliance is one of the reasons that she is denied benefits.

 Ms. Meriwether's testimony at the hearing indicates that she was both sober and treatment compliant for an extended period of time, yet she continued to have difficulty managing her bipolar disorder, schizophrenia, and Hepatitis B.  Considering that the ALJ's chief reasoning for denying Ms. Meriwether SSI benefits rested on her inability to remain sober for an

18

extended period of time, it is problematic that he did not investigate further at the hearing this nearly seven month period of sobriety and treatment compliance. Exactly the information the ALJ claimed that he did not have—namely, documentation that Ms. Meriwether stayed free of drugs and alcohol all while abiding by her treatment plan—was available to the ALJ at the hearing, but he failed to solicit it. As a result, it is not possible to say that there is substantial evidence in the record to support the ALJ's contention that Ms. Meriwether would be able to work if she remained sober and treatment compliant. (AR 25.)

The ALJ in his decision determined that "a finding of 'not disabled' is appropriate under the framework of the above-cited rule [42 U.S.C. § 432(d)(1)(A)]" that "the undersigned finds that there has been no continuous twelve-month period during which the claimant has not been able to work due to her disability." (AR 30.) Yet this is not what 42 U.S.C. § 423(d)(1)(A) says. The standard for disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…which has lasted or *can be expected to last for a continuous period of not less than twelve months*." 42 U.S.C. § 423(d)(1)(A) (emphasis added). Therefore, so long as the medical evidence in the record indicates that an individual's disability is expected to continue at least twelve consecutive months, an individual is eligible for SSI benefits. 42 U.S.C. § 423(d)(1)(A).

It is true that Ms. Meriwether reported some progress with respect to managing her symptoms, despite discussing her "mood change" and "different personalities" earlier in the hearing. The ALJ, however, linked her possible gains to her sobriety, and does not investigate her medication routine, how often she sees her clinician at Anchor Mental Health, or if she still uses the services at Anchor Mental Health.

**ALJ:** Are they helping you?
**Ms. Meriwether:** The Seroquel?

19

**ALJ:** Yes

**Ms. Meriwether:** Yeah it calms me and the voice, it calms me and everybody down. That's why I stay to myself and we be calmed down. Then when I don't take them that's when I have a problem.

**ALJ:** Well, I'm glad to hear that at least at this point in time that you're clean which helps you an awful lot and because I know you had multiple treatments for substance abuse in the past and seemed to be very heavy but as of this time it worked.

(AR 51.)

There is no evidence in the record that details how well Ms. Meriwether responded to Seroquel during her many months of continuous sobriety, beginning March 11, 2010, except for conflicting testimony from Ms. Meriwether herself. (AR 48, 59.). She initially stated that she was still having paranoid symptoms, but the ALJ did not follow up on those, and instead the conversation shifted to a discussion of Ms. Meriwether's hepatitis B.

**ALJ:** Stay to yourself, okay, and when has that become more difficult for you? Can you ` tell me that? These statements were made in '09?

**Ms. Meriwether:** Back in '05 I stayed to myself. I don't be comfortable out there. I stay to myself. I'm a little too paranoid and [inaudible] when my mind be stressed. I don't think, I think everybody out to get me, you know, stuff like that. I just stay to myself.

**ALJ:** Let's talk about that, okay. So let's concentrate and the way I see it, what you're doing is you're applying on the basis of some problems mentally, okay with mood changes and things like that.

**Ms. Meriwether:** Yeah

**ALJ:** You weren't applying as far as I know in terms of any physical limitations or any pain, it's more the—

**Ms. Meriwether:** Mental

**ALJ:** —more the mental?

**Ms. Meriwether:** Yeah, and then I found I think 2007 I had hepatitis B.

**ALJ:** Hepatitis B?

**Ms. Meriwether:** Mm-mmh and when I would start getting, seeing a doctor that it keeps me, I be tired a lot and I be in pain off and on. They just give me motrin.

**ALJ:** When was the hepatitis B diagnosed?

(AR 45.)

20

**Evidentiary Gap**

The Commissioner contends that the ALJ was under no duty to supplement the record, and only needed to do so "if necessary." (Def. Mem. at 11.)  In this case, however, it was necessary, due to the heighted duty the ALJ owed to Ms. Meriwether and the considerable length of the evidentiary gap.  The Commissioner also contends that Ms. Meriwether's counsel—whom she retained for the Appeals Council hearing—did not supplement the record with additional evidence, thereby rendering "unpersuasive" her claim that the ALJ did not develop the record properly.  (Def.'s Mem. at 11.)  Other district courts have held, however, that even when represented by counsel before an ALJ, it is not an impediment to remand simply because counsel did not supplement the record at that stage.

> It is unclear as to why Claimant's counsel did not supplement the record; however, regardless of whom is to blame, the end result is a conspicuous gap in the evidence…when circumstances point to the probable existence of probative and necessary evidence, which has not been furnished by the claimant, the failure of an ALJ to ask further questions, request additional records, or contact treating sources amounts to neglect of the ALJ's duty to develop the record.

*Huddleston v. Astrue*, 826 F.Supp 2d 942, 959 (S.D. WV 2011).

Therefore, the Commissioner's contention that Ms. Meriwether can no longer argue that the ALJ did not properly develop the record, simply because she retained counsel who did not supplement the record at a later stage, is wrong.  It does not alter the duty that the ALJ owed to Ms. Meriwether, who was then-unrepresented, mentally ill, and possessed borderline intelligence.

The claimant has the burden of proving disability.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).  The ALJ, however, has a concurrent duty to ensure that the record is fairly and

adequately developed. 20 C.F.R. § 416.912. When the record has evidentiary gaps that result in unfairness, remand is necessary. *Brown v. Shalala*, 44 F.3d 931, 935 (11th. Cir. 1995). Since a social security hearing is non-adversarial, the ALJ is responsible in every case to ensure that an adequate record is developed consistent with the issues raised. 20 C.F.R. § 404.944.

This does not mean that the undersigned is imposing an unduly burdensome standard on the ALJ, which the Seventh Circuit discussed in *Turner v. Astrue*, noting that "while it is true that the ALJ has a duty to make a complete record, this requirement can reasonably require only so much…taking 'complete record' literally would be a formula for paralysis." *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993.) Moreover, when there are no obvious gaps in the medical record, the ALJ need not undertake additional investigation, and the record must only be supplemented where the evidentiary gap results in "unfairness or clear prejudice." *Turner v. Astrue*, 710 F.Supp 2d 95, 108 (D.D.C., 2010) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79, n. 5 (2d Cir. 1999)). Even protracted evidentiary gaps are not automatically prejudicial, as seen in *Pinkey v. Astrue*, 675 F. Supp 2d 9 (D.D.C. 2009.) There, the court held that so long as "there is nothing in the record to show that plaintiff's psychiatric condition had changed" during a twenty month gap between the last medical evidence in the record and the administrative hearing, the evidentiary gap was not prejudicial. *Id*. at 21.

This case, however, is distinguishable. During the time of the evidentiary gap, Ms. Meriwether became sober and claims that she was treatment compliant, which are the two bases upon which the ALJ rejected her application for SSI. This change in her condition, along with the length of the evidentiary gap (twenty months) and the fact that the ALJ had a heightened duty to develop the record, all merit remand back to the ALJ, so that the evidentiary gap may be remedied.

**c. No Consultative Exam from February 10, 2009 to October 28, 2010**

Ms. Meriwether also contends that the evidence in the record was "insufficient to establish whether or not the Plaintiff was disabled" and that a consultative examination was necessary to evaluate her condition. (Pl's Mem. at 7.) To support this contention, Ms. Meriwether cites *Dozier v. Heckler*, 754 F.2d 274 (8th Cir. 1985), which states that an ALJ's refusal to order a consultative exam is reversible error, in the event that the medical sources in the record do not provide sufficient information about whether or not a claimant is disabled. *Id.* at 276. The regulations state that there is a need for a consultative exam in the event that the medical evidence regarding a claimant's impairment(s) is insufficient. *See* 20 C.F.R. § 416.917 (stating that "if your medical sources cannot or will not give us sufficient information about your impairment to determine whether you are disabled…we may ask you to have one or more physical or mental examinations or tests.").

In *Dozier*, however, the claimant at issue had debilitating migraine headaches, was prone to anxiety, and had a toe malady, yet the record contained no neurological, psychological, or orthopedic examinations, all of which were necessary to evaluate these impairments and their severity. 754 F.2d at 276. Ms. Meriwether's record contains numerous records relating to her bipolar disorder, schizophrenia, and Hepatitis B, and she previously underwent two consultative exams: Dr. Scarcella's psychiatric consultative examination and Dr. Miknowski's physical consultative examination (AR 361-64; 401-03.)

Ms. Meriwether contends that during her hearing, the ALJ promised that he would order this consultative exam during her hearing. The ALJ said that he would "admit the evidence currently in the record and take testimony at the hearing. If necessary, I will also obtain relevant

23

medical and non-medical records at the government's expense." (AR 38.)  This is consistent with 20 C.F.R. § 416.917, which says the SSA may obtain a consultative exam at the government's expense.  The regulations also state, however, that a consultative exam will not be ordered "until we have made every reasonable effort to obtain evidence from your medical sources."  20 C.F.R. § 416.912(e.)

While the ALJ is entitled to request a consultative exam, it is not required.  A consultative exam may be an appropriate way to complete the record if the medical evidence about a claimant's impairment(s) is insufficient, highly technical, or specialized medical evidence is needed that cannot be obtained from a claimant's treating physician, or if there is an indication of a change in a claimant's condition that is likely to affect the claimant's ability to work, but the severity of her impairment has not been established.  20 C.F.R. § 404.919a (b)(1)-(4).

This language is consistent with the ALJ's promise, who said that he would obtain a consultative examination *if necessary*, if the needed information was not readily available from the records and examinations.  While the undersigned disagrees that the ALJ had the full amount of information necessary to make a disability determination, it was not the lack of a third consultative examination that prejudiced Ms. Meriwether.  Instead, Ms. Meriwether should be afforded a thorough hearing in front of the ALJ and her medical records from February 2009 to October 2010 should be reviewed, in order to remedy the evidentiary gap in the record.


**2. <u>Erroneous Assessment of Plaintiff's Residual Functional Capacity</u>**

Ms. Meriwether also alleges that the ALJ failed to give Dr. Scarcella's consultative exam proper weight in the RFC assessment when considering her concentration abilities.  (Pl.'s Mem.

at 11.)  Ms. Meriwether claims that the ALJ "provided no explanation of how he accorded significant weight to the opinion of Dr. Scarcella, yet found that the Plaintiff had no more than a moderate limitation in attention and concentration." (Pl.'s Mem. at 11.)

As noted above, Dr. Scarcella did find that Ms. Meriwether "manifested an inability to maintain sustained attention and concentration, which would affect her ability working."  (AR 363.)  In his decision, the ALJ did not comment on Dr. Scarcella's analysis of Ms. Meriwether's lack of concentration abilities, despite affording his report "significant weight." (AR 24.)  Dr. Miknowski found that Ms. Meriwether was "somewhat disoriented and poorly coherent," but did not specifically mention concentration.  (AR 401.)  Finally, Dr. Patricia Cott found that Ms. Meriwether had moderate limitations in her ability to understand, remember, and carry out detailed instructions.  (AR 397.)  The ALJ, however, characterized Dr. Cott's analysis of Ms. Meriwether's concentration abilities as such: "[Ms. Meriwether] has no significant limitations with respect to sustained concentration and persistence except that she had moderate limitations in her ability to maintain attention and concentration for extended periods." (AR 23.)  On its face, this confusingly worded sentence indicates that Ms. Meriwether has no real difficulty with concentration—except that she has difficulty with concentration.  It is possible that the sentence makes reference to the fact that that Dr. Cott found Ms. Meriwether "moderately" limited in her concentration abilities, but not "markedly" limited, but the undersigned is not certain.

Moreover, on December 3, 2007, December 10, 2007, January 11, 2008, January 17, 2008, January 23, 2008, January 30, 2008, February 22, 2008, March 31, 2008, April 22, 2008, June 18, 2008, Ms. Meriwether's treating physician at Anchor Mental Health described her as having concentration problems. (AR 182, 239, 236, 234, 232, 229, 222, 216, 207, 197.)

Considering that these records come from Ms. Meriwether's treating source, Anchor Mental Health—information that is afforded special significance and can be entitled to controlling weight—their assessments regarding her concentration abilities are particularly important. *See* 20 C.F.R. § 404.1527(c) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s).").

Even if those records were not afforded controlling weight, however, at the very least, the D.C. Circuit's treating physician rule would apply. *Butler*, 353 F.3d at 1003. That treating physician rule holds that a treating physician's report is binding on the fact-finder unless contradicted by substantial evidence, and an ALJ is required to explain his reasoning for rejecting the opinion of a treating physician. *Id.* Anchor Mental Health's notes on Ms. Meriwether's concentration abilities, however, were not even mentioned, let alone discussed, in the ALJ's decision.

The ALJ also did not explain why he disregarded Dr. Scarcella's view on Ms. Meriwether's concentration abilities—despite affording the opinion "significant weight." (AR 24.) The SSA concedes that "it is clear that the ALJ did not accept Dr. Scarcella's views about Plaintiff's ability to concentrate." (Def.'s Mem. at 12.) The ALJ may discredit part or all of a doctor's opinion, so long as he reasonably explains why he decided to do so. *See Butler*, 353 F.3d at 1002 (holding that an ALJ must explain what evidence he credited and what evidenced he did not, and why). Here, the ALJ did not adequately explain why he disregarded Dr. Scarcella's opinion on the issue of concentration.

The ALJ also failed to follow up when Ms. Meriwether testified that she had sustained three concussions, despite promising to do so.

**ALJ:** Have you had any difficulty there, following written and oral instructions?
**Ms. Meriwether:** I just have comprehend sometimes. I had three concussions, so it's hard to—
**ALJ:** Right, and we're going to talk about those. Are you still able to follow simple instructions?
**Ms. Meriwether:** Mm-mmh [inaudible]

(AR 44.)

After this vague testimony, where Ms. Meriwether makes an incoherent pronouncement, then raises the issue of concussions, the ALJ did not probe further or return to the issue, as he promised. The ALJ did not ask when these alleged concussions occurred, did not ask if Ms. Meriwether had sought medical treatment for these concussions, did not seek records to verify these concussions, and did not ask her about the side effects, if any, that these concussions might have had on her ability to concentrate.

It is unclear if the records from Anchor Mental Health, Ms. Meriwether's testimony about the several concussions she sustained, and the opinion of Dr. Scarcella were rejected or ignored. It is difficult for the undersigned, therefore, to perform the necessary review of the ALJ's reasoning. *See Butler*, 353 F.3d at 1002 (holding that a court cannot perform its limited reviewing function without an explanation of what evidenced the ALJ considered and why in making his determination.) Therefore, the undersigned recommends remanding this issue back to the ALJ so that he may explain the amount of weight he gave to the medical evidence in the record regarding Ms. Meriwether's concentration abilities.

## V. <u>RECOMMENDATION</u>

For the reasons stated above, the undersigned recommends that the Plaintiff's Motion for Reversal [6] granted in part, denied in part, and the Defendant's Motion for Judgment of

Affirmance [7] be granted in part, denied in part. The undersigned further recommends that, pursuant to 42 U.S.C. §405(g), this case should be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

DATE: November 24, 2014                           /s/
                                         ALAN KAY
                                         UNITED STATES MAGISTRATE JUDGE